IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

J.A.M.,                              *

    Petitioner,                   *

vs.                                  *

                                          CASE NO. 4:25-cv-342 (CDL)

JASON STREEVAL, *et al.*,             *

    Respondents.                  *

_____

O R D E R

The Executive Branch has broad discretion in the enforcement of the Nation's immigration laws. That discretion, however, is not unbridled. It is constrained by enactments of Congress. When a dispute exists as to the meaning of those enactments, the Judicial Branch has the constitutional duty to interpret them. Such a dispute gives rise to this case.[1]

Petitioner is an alien who has not been admitted to the United States. He is presently detained at the Stewart Detention Center. Petitioner filed a petition for a writ of habeas corpus, asserting that he is entitled to a discretionary bond hearing under 8 U.S.C.

_____

[1] Before addressing the Petition, the Court commends Respondents' attorneys and staff, who prepared an expedited response to the Petition as ordered by the Court and did so having been unpaid for several weeks due to the current government shutdown. These employees are a shining example of the thousands of federal employees who have chosen to devote their time and talents to serve the United States of America. They are thanked too rarely and often criticized unfairly. Loyal service to country alone should be appreciated. Maintaining professionalism and diligence while not being paid should be loudly applauded.

§ 1226(a).  Respondents contend that Petitioner is detained under 8 U.S.C. § 1225(b)(2) and that his detention is mandatory, without an opportunity for a bond hearing.  As explained below, the Court grants Petitioner's petition for a writ of habeas corpus to the extent that the Court finds that § 1225(b)(2) does not apply to the Petitioner under the circumstances supported by the present record.  Instead, § 1226(a) applies, and the Court accordingly orders Respondents to provide Petitioner with a hearing to determine if he may be released on bond under § 1226(a)(2), in accordance with the applicable regulations.

FACTUAL BACKGROUND

For purposes of the pending Petition, the following facts are undisputed.  Petitioner is a citizen of Mexico.  Although Petitioner has lived in the United States for more than twenty years, he did not enter the United States through a port of entry or official border crossing, and he has never been legally admitted to the United States.  Petitioner was recently arrested as an alien who is in the United States unlawfully, and he is being detained by Respondents pending removal proceedings.  He seeks a bond hearing to make the case that he should be released from detention pending any removal proceedings because he is neither a danger to the community nor a flight risk.  Respondents respond that Petitioner's detention is mandatory, and thus, he is not entitled to a bond hearing.

DISCUSSION

## I.    **Subject Matter Jurisdiction**

Before the Court addresses the merits of Petitioner's Petition, the Court finds that it has jurisdiction to consider it. The Court has the authority to grant a writ of habeas corpus to a petitioner who demonstrates that he is being held in custody in violation of federal law.  28 U.S.C. § 2241(a), (c)(3); *see Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (noting that § 2241 habeas corpus proceedings are available to challenge the lawfulness of immigration-related detention).  Congress has enacted several statutory provisions limiting judicial review of deportation decisions.  Respondents argue that 8 U.S.C. § 1252(e)(3) prevents judicial review.  They maintain that section 1252(e)(3) provides the U.S. District Court for the District of Columbia with exclusive authority to review challenges to regulations and policies issued to implement 8 U.S.C. § 1225(b). But Petitioner is not challenging the *implementation* of 8 U.S.C. § 1225(b)(2), and he does not dispute that § 1225(b)(2) requires detention of aliens detained under that subsection.  Rather, Petitioner asserts that Respondents lack statutory authority to detain him under § 1225(b)(2) because that statute does not apply to an alien in his circumstances.  Petitioner maintains instead that 8 U.S.C. § 1226(a) provides the statutory authority for his

detention.  Accordingly, § 1252(e)(3) does not deprive this Court of jurisdiction.

For the sake of completeness, the Court finds that no other jurisdiction-stripping provisions apply here.  Petitioner does not seek review of a discretionary decision by the Attorney General or the Secretary of Homeland Security (8 U.S.C. § 1252(a)(2)(B)(ii)); he does not challenge a final order of removal (8 U.S.C. § 1252(a)(2)(C)); nor does he seek judicial review of a legal or factual question arising from removal proceedings, the decision to commence removal proceedings, the adjudication of his removal case, or the execution of a removal order (8 U.S.C. §§ 1252(b)(9) and 1252(g)).  *See Jennings v. Rodriguez*, 583 U.S. 281, 292 (2018) (Alito, J., joined by Roberts, C.J. and Kennedy, J.); *id.* at 355 (Breyer, J., joined by Ginsburg and Sotomayor, J.J., dissenting) (finding that § 1252(b)(9) did not bar judicial review of a detention order); *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (concluding that § 1252(g) applies to "three discrete actions": commencing removal proceedings, adjudicating removal cases, and executing removal orders).  The Court is satisfied that it has jurisdiction to consider Petitioner's Petition.

## II.  Statutory Authority for Petitioner's Detention

Petitioner and Respondents disagree on which provision of the Immigration and Nationality Act governs Petitioner's present

detention.  Petitioner contends that 8 U.S.C. § 1226(a) applies, which would permit Respondents to release Petitioner on bond or conditional parole pending his removal proceedings.  Respondents argue that Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(2), which mandates detention of certain aliens pending removal proceedings.

To resolve this issue of statutory interpretation, the Court must consider three provisions of the Immigration and Nationality Act: 8 U.S.C. §§ 1225(a)(1), 1225(b)(2)(A) and 1226(a). Respondents rely on § 1225(b)(2)(A) to support their argument that detention is mandatory for Petitioner.  That provision states: "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained" pending removal proceedings.  Section 1225(a)(1) provides the definition for "an applicant for admission" as used in § 1225(b)(2)(A): an alien "present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed . . . an applicant for admission."  Section 1226(a)(2), which is relied upon by Petitioner, provides aliens who are arrested with an opportunity for a bond hearing: "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United

States," but the Attorney General "may release the alien" on bond or conditional parole except in certain situations.

Aliens who are arrested pursuant to § 1226(a) are clearly entitled to a bond hearing; detention is not mandatory except in limited circumstances not applicable here. It is equally clear that aliens who fall within § 1225(b)(2)(A) must be detained without the opportunity for a bond hearing. Respondents contend that every alien who is within the United States and who has not been lawfully admitted falls under § 1225(b)(2)(A) and qualifies for mandatory detention. This argument has been accepted by the Board of Immigration Appeals, and therefore, is being applied by all immigration officers and immigration judges throughout the country, including those stationed at Stewart Detention Center. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).

The interpretation of the applicable statutes by Respondents here and by the BIA in *Yajure Hurtado* overlooks part of the language in § 1225(b)(2)(A), it gives little consideration to the overall statutory scheme, and it ignores § 1226. Section 1225(b)(2)(A) requires mandatory detention of all "applicants for admission" if the examining immigration officer determines that "*an alien seeking admission* is not clearly beyond a doubt entitled to be admitted." (emphasis added). "Applicant for admission" is defined in the statute as an alien "present in the United States who has not been admitted." § 1225(a)(1). It is undisputed that

when Petitioner was arrested he was present in the United States and had not been admitted. Therefore, he clearly qualifies as an "applicant for admission" under this broad language. But that does not end the interpretative inquiry. The statute that mandates detention does not state that all "applicants for admission" shall be detained. It narrows this mandatory detention to aliens who are "seeking admission." Had Congress intended for this subsection to apply to all applicants for admission, it could have said so by simply replacing the phrase "an alien seeking admission" with the term "an applicant for admission;" or to be even more succinct, it could have replaced the phrase "an alien seeking admission" with the word "alien." Under either of these constructions, it would be clear that "applicant for admission" means the same thing as "alien seeking admission," which is Respondents' interpretation of the statute. But this is not the language that Congress chose.

Instead, Congress chose the phrase, "an alien seeking admission." Because this phrase is not defined in the statute, the Court must construe it based upon its ordinary everyday meaning. Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 69 (2012). "Seeking admission" is a participial phrase that modifies the noun alien. It narrows the meaning of alien to one who is attempting to obtain lawful admission to the United States. "Seek" is an active verb, not a type of status. *Seek*, Merriam-Webster, [https://www.merriam-](https://www.merriam-)

webster.com/dictionary/seek            [https://perma.cc/42LS-5YMV]
(defining "seek" as "to try to acquire or gain").  The Court cannot
simply disregard these words as superfluous.  It must assume that
Congress intended for them to have a purpose.  Scalia & Garner,
*supra*, at 174 (describing the "surplusage canon": "If possible,
every word and every provision is to be given effect . . . . None
should be ignored.  None should needlessly be given an
interpretation that causes it to duplicate another provision or to
have no consequence.").  Thus, based on a plain reading of the
language and aided by these standard canons of statutory
construction, § 1225(b)(2)(A) applies to aliens in the United
States who have not been admitted ("applicants for admission"
definition) AND who are attempting to obtain lawful admission to
the United States.

    This interpretation is also consistent with the framework of
§ 1225, which focuses on the admission of aliens upon their arrival
to the United States or upon an attempt to obtain admission after
arrival.  *See K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291
(1988) (Kennedy, J.) ("In ascertaining the plain meaning of the
statute, the court must look to the particular statutory language
at issue, *as well as the language and design of the statute as a
whole."*) (emphasis added).  This so-called "whole-text canon"
calls on the interpreter to consider the entire text "in view of
its structure and of the physical and logical relation of its many

parts." Scalia & Garner, *supra*, at 167. Its cousin canon counsels that the title and headings for statutory provisions may sometimes be indicators of meaning. *Id.* at 221.[2] Section 1225 focuses on "inspection" of aliens upon their arrival and/or when they otherwise present themselves for admission. In addition to the statutory language previously discussed, the framework of the statute and the headings within the statute are consistent with the interpretation that the statute applies to aliens who are actively seeking admission to the United States.

At the time of his arrest, Petitioner was an alien in the United States who had not been lawfully admitted, and thus he falls within the broad definition of "applicant for admission," BUT based on the present record, he was not attempting to be lawfully admitted. Therefore, he does not qualify as an "alien seeking admission" subject to mandatory detention under § 1225(b)(2)(A), which requires both presence and seeking admission.

Section 1226(a) supports and bolsters this interpretation. It must be read in conjunction with § 1225. *See id.* at 252 ("Statutes *in pari materia* are to be interpreted together, as though they were one law."). And these provisions should be read harmoniously when possible. They should not be interpreted in a way that renders them incompatible or contradictory. *Id.* at 180.

---

[2] The INA does not have an explicit disclaimer stating that headings do not affect the interpretation of the statute.

Section 1226(a) cannot simply be ignored when interpreting the requirements for detention. *See United States v. Butler*, 297 U.S. 1, 65 (1936) (Roberts, J.) ("These words cannot be meaningless, else they would not have been used."). Congress clearly intended for some aliens, who are arrested and similarly situated to Petitioner, to be provided with the opportunity for a bond. The plain language of § 1226(a)(2) can mean nothing else. The only way to reach the interpretation urged by Respondents is to ignore the statute's plain language, which the rules of statutory construction do not countenance.

Reading §§ 1226(a)(2) and 1225(b)(2)(A) harmoniously and in context, the Court can only reach one reasonable interpretation: for an alien seeking admission upon his arrival to the United States or at some later time, Congress has determined that his detention is mandatory while a determination is made as to whether he is allowed entry and admission. But for aliens who are found in the country unlawfully and are arrested, an immigration officer or immigration judge has the discretion, after considering all the circumstances, not to detain such aliens and instead grant them release on bond.[3]

Respondents argue that this interpretation would lead to incongruous treatment of aliens and subject the lawful applicant

---

[3] There are exceptions that require mandatory detention of aliens with certain criminal history that do not apply here. *See* 8 U.S.C. § 1226(c).

to more stringent requirements than the unlawful alien evader. Respondents' counsel exclaims: why would Congress do such a thing? Congress could have concluded that when someone first enters the country, he should be detained while the authorities have control of him and before he disappears. At the same time, Congress could have concluded that for certain persons who have been in the country for some time, mitigating circumstances may exist that justify granting them a bond, as long as they are not a danger to the community or a flight risk. This rationale is not so absurd that the Court should conclude that there is no way Congress could have intended this arguable disparate treatment between those seeking admission upon arrival or at some later date and those arrested after having been in the country. Scalia & Garner, *supra*, at 234 (explaining the "absurdity doctrine," a narrowly applied contextual canon that permits a statutory interpreter to disregard or "judicially correct" certain statutory language in limited circumstances where the failure "to do so would result in a disposition that no reasonable person could approve," which is clearly not the case here).

Respondents rely on *Jennings v. Rodriguez*, 583 U.S. 281 (2018) to support their interpretation of § 1225(b)(2). Although that decision did involve the same provisions of the INA that the Court must interpret here, the issue presented in *Jennings* was different, and therefore, the Supreme Court did not interpret the precise

language of the relevant statutes involved here.  The issue before the Supreme Court in *Jennings* was whether the INA implicitly requires periodic bond hearings for certain alien detainees.  *Id.* at 296-97.  The Supreme Court did not have to decide whether an alien arrested in the United States, after having been in the country illegally for several years, qualified as "an applicant for admission" who is "seeking admission" and thus was subject to mandatory detention under § 1225(b)(2) or whether the alien was entitled to a bond hearing under § 1226(a).

In addition to not being on point and thus not binding precedent for this case, *Jennings* is not even analogous and thus does not constitute persuasive authority.  Respondents pick certain isolated phrases from *Jennings'* general background description of the INA detention framework to bolster their position that every alien arrested in the United States regardless of their lack of criminal history and the absence of any evidence that they would be a flight risk or a danger to the community is now subject to mandatory detention without the opportunity for a bond hearing, notwithstanding the clear language of § 1226(a). Respondents latch on to the majority opinion's description of § 1225(b)(2) as a "catchall" provision that they argue is intended to include all aliens, including those who did not seek admission when they initially entered the United States or who never sought admission thereafter.  It may indeed be a "catchall," but it only

catches "aliens seeking admission." Significantly, the Supreme Court did not specifically engage in any statutory construction of the phrase "alien seeking admission" in the context of § 1225(b)(2). It did not need to because that was not the issue in *Jennings*. Accordingly, the Court finds Respondents' reliance upon *Jennings* unpersuasive. *Cf. id.* at 289 (noting that §§ 1225(b)(1) and (b)(2) authorize "the Government to detain certain aliens seeking admission into the country" and that §§ 1226(a) and (c) authorize "the Government to detain certain aliens already in the country pending the outcome of removal proceedings").

The Court also finds unpersuasive the Board of Immigration Appeals' recent decision interpreting § 1225(b)(2) to apply to all aliens who are found in the United States unlawfully. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). The BIA's novel interpretation that any alien present in the United States is "seeking admission" distorts the plain meaning of the statute. The opinion also largely ignores § 1226 and fundamental canons of statutory interpretation that require consideration of the relevant context within which the statute exists. This Court is not alone in its conclusion regarding the lack of persuasiveness of *Yajure Hurtado*. Other district courts across the country have also rejected it. *Merino v. Ripa*, No. 25-23845-CIV, 2025 WL 2941609, at *5 (S.D. Fla. Oct. 15, 2025) (collecting cases rejecting *Matter of Yajure Hurtado*).

The Government's arguments here largely parrot the rationale in *Yajure Hurtado*, boldly proclaiming that "applicant for admission" and "alien seeking admission" are synonymous. If the Court were called upon to compare these two phrases using the ordinary meaning of the words, then it may be persuaded by Respondents' argument. In ordinary language, "an applicant for admission" could be someone "seeking admission." But the Court is constrained by the specific definition Congress gave to "applicant for admission." Under the statutory definition, "applicant for admission" means an alien in the United States who has not been lawfully admitted. 8 U.S.C. § 1225(a)(1). That is the definition that must be compared to an "alien seeking admission." And under no reasonable interpretation is "alien seeking admission" synonymous with "any alien present in the United States who has not been admitted." The second phrase, "seeking admission," modifies and narrows the first, "an alien present in the United States who has not been admitted." It does not simply restate it. Counsel and *Yajure Hurtado's* expansive understanding of *synonym* would make an experienced grammarian, or even a rookie 7th grade English teacher, wince.

In summary, the Court concludes that § 1226(a), not § 1225(b)(2), applies to Petitioner. Accordingly, based on the present record, Petitioner is not subject to mandatory detention. Instead, he is entitled to a bond hearing. Whether he is

ultimately released on a bond will depend upon the discretion of the immigration officer and immigration judge as they apply the provisions of § 1226(a)(2) and the applicable regulations.[4]

CONCLUSION

For the reasons explained above, the Court grants Petitioner's petition for a writ of habeas corpus to the extent that the Court orders Respondents to provide Petitioner with a bond hearing to determine if he may be released on bond under § 1226(a)(2) and the applicable regulations. *See* 8 C.F.R. §§ 236.1 & 1236.1.

IT IS SO ORDERED, this 1st day of November, 2025.

S/Clay D. Land
_____
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA

---

[4] In light of today's ruling, the Court finds it unnecessary to address Petitioner's constitutional due process arguments.